Let's go to the last case for today. That case would be Tekmen v. Reliance Standard Life. And we are prepared to hear arguments from the appellate's lawyer, Mr. Bachrach. Bachrach. No one gives me credit for being able to pronounce names the first time. But I tried to do it the second time. Good morning. May it please the Court. Joshua Bachrach. I represent the defendant appellant in this case. This lawsuit involves a claim for disability benefits under an ERISA plan. The district court made a number of mistakes when it entered judgment in favor of Ms. Tekmen, including the way in which the court addressed the issues that were put forth. The court's scheduling order called for summary judgment motions. The parties filed summary judgment motions. And there was even a hearing, and the court only referred to summary judgment under Rule 56. But then the district court decided the case under Rule 52. And that matters for a few reasons. One, it matters to the standard of review applied by this court, whether it looks to clear error by the district court or conducts its own de novo review of the claim. Before we went to 52, didn't the district court say, I'm denying the summary judgment motion? The court said, I'm denying the summary judgment motions and deciding the case under Rule 52. Okay. So your contention is you're going to proceed it as a summary judgment, or there's some de novo review or something? Well, the Supreme Court has said that the parties can decide, or the ones who are to decide how to present an issue to the court. And the court agreed to hear the case under a joint scheduling order under Rule 56. So there's no basis. And if you look at the law of the circuit, there was no ---- Can I ask a follow-up, counsel? So the district court denied summary judgment, and it sounds from the order, he said, based on the state of the record. So I assume because he thought there were disputed issues of fact that needed to be resolved. So what is it, if there are disputed issues of fact precluding summary judgment, and there's no right to a jury trial in these cases, what is it the district court is supposed to do other than have a Rule 52 bench trial? The same thing that every district court has done in this circuit, Your Honor. Courts in other circuits have said that Rule 56 is only the means to get the issue before the court. This is like the fake summary judgment. They should call it summary judgment, but the district court should make findings of fact. Correct. Well, it shouldn't make findings of fact, necessarily. Well, who's going to resolve the fact disputes then? Well, Your Honor, all I can say is that this is the way this court has done it. What is the way? I mean, you actually haven't answered the question. Rule 56. So it's Rule 56. There are disputed issues of fact. So under the vehicle of summary judgment, the district court resolves the disputes. The district court resolves the question of whether the decision is correct in the first instance. But let's look at what this court has said. It is a genuine question. I don't understand your position. So if there are disputes of fact, there's no right to a jury trial, and you don't think there should be a Rule 52 bench trial, how do those disputes get resolved? Rule 56 puts the issue before the court, and I'll explain what this court has said. Don't tell me what the court has said. So the district court should resolve the factual findings, but call it summary judgment, and then we should? Yes, Your Honor. Why would we do that? Because that's the way this has been done. Why? The question doesn't make any sense. Why is it like that? Because the issue is just the vehicle or the conduit to get the issue. Who says it has to be done that way when you have a – you know what's – What hangs this up is what we know to be summary judgment. We know you don't give summary judgment here all the time if there's a disputed issue of fact. You're saying this is a special vehicle that's used in this area of the law for which the court has carved out something different. Who carved it out? This court has, Your Honor. Last year in Shoup v. Hartford Life, this court held, and that's 19-F-4-6-97, this court stated on de novo review, our job is to make our own independent determination of whether Shoup was entitled to the LTD benefits. In Johnson v. American United Life. I see. So this is like this business about it's de novo review if the administrator didn't have discretion. Right? That's what you're talking about, the cases that say that. But that's a different question. It's not, Your Honor, because now I'll go to the case that it relied on, which is Johnson v. American United Life. In an appeal under RISA, in an appeal under RISA, we review a district court's decision de novo, applying the same standards governing the district court's review of the plan administrator's decision. So you read that case to say that when there are disputed issues of fact, district court should decide them and then pretend that it's doing summary judgment, because I don't see that in that case. Your Honor, in every disability case there are issues of fact. That is not true. Some of them turn on the language, the contract language, and can be resolved as a matter of law. Very few, but in most disability cases. Okay, but some can. Some, but not all. And in the SHU case. You said all, and I think it matters that we're clear about this, because there are a lot of courts who have explained that there is a limited role for summary judgment in these cases. When there are no disputed issues of fact, courts should decide them on summary judgment. When there are disputed issues of fact, of course you're going to need a bench trial under Rule 52. And I know that there are one or two circuits that have said, you know what, let's just call it all summary judgment. I will, however, note that even in those courts, they do review those fact findings by district courts for clear error, not de novo. So I don't really know why it matters so much to you what we call this. Look, Judge Harris, this court has never applied Rule 52. This court has never addressed a Rule 52 on an ARISA disability case under abuse of discretion or under de novo review. So your position, as I understand it, is there can be no Rule 52 bench trials in ARISA cases. It all has to come under summary judgment, including when there are disputes of fact. That is your position. Yes. And in the Shoup case, in the Shoup case, there were disputed issues of fact. There were opinions on both sides. And counsel knows this because he handled that case. And what we're saying here is that the standard by which this court decides this case, reviews this case, shouldn't depend on a judge saying, I'm going to choose Rule 56 over Rule 52 or vice versa. And it shouldn't depend on who won in the district court. It doesn't. It depends on whether the district court made factual findings. If the district court made factual findings, we review those findings for clear error, whether he called it Rule 56 or Rule 52. And the district court in the Shoup case made factual findings. And the court of appeals in the Shoup case made findings of fact as well. There is not one. Counsel, could I ask you a question? Yes, Your Honor. I'm worried that you're making an issue where there might not be one. You agreed in the district court that the administrative record was the sole record. Correct. In the case. Okay. So why couldn't the district court have proceeded under Rule 52? And once it did, you didn't lodge an objection, did you? How could I? Because there was a hearing, and it was mentioned at the hearing itself that we were applying Rule 56. Did you bring it up to the district court? It was never an issue, Your Honor, because, well, I will say that counsel mentioned after filing Rule 56, the plaintiff then said, well, maybe the court should use Rule 52. But the court then at the hearing never addressed the issue, never said, should I do 56 or 52. So we never had that opportunity. Okay. But what were you denied? What were you denied as a result of the court making factual findings under Rule 52? Two things, Your Honor. First, there were admissions because they failed to follow the rules. They did not respond to our statement of material facts. That's one. Secondly, it affects. But the district court didn't want to. The district court exercised its discretion, did it not, in that regard? It didn't say so. Well, isn't that the only fair inference from the record? I don't think that's the. That it went on to consider the facts? I don't think that can be an inference, Your Honor. I think it has to address it. But I'd like to just, I'd like to just point. Tell me, did you cite that soup case in your brief? Which case, Your Honor? Soup case. I don't recall that. You certainly are getting it today. I'm trying to determine where we are. You did bring up the Johnson case. Oh, I'm sorry. The soup case was part of our supplemental authority that we submitted to the court last December, I think it was, after it was decided because the case had been fully briefed. That was the 28-J motion. You brought it up. We brought up. Let me ask about the Johnson case because you tie in the Johnson case as the basis for it. And Johnson, I'm trying to understand how that helps you because that really was, we were reviewing a grant over summary judgment. That's different than what we have here. But that's the point, Your Honor, is this court has always ruled under de novo review based on summary judgment, even when there are conflicting facts. And why that matters, Judge Keenan, you'd ask. When we're reviewing a grant of a summary judgment, what we're looking for is to determine whether there were any disputed issues of fact. We say yes. What do we do then? Send it back, right? No, Your Honor. You're saying that if in these cases where there is a grant of summary judgment and on review, we then review it to determine there's disputed issues, we say there are disputed issues, you then say this court resolves the dispute? That's what this court stated in Shoup, which is a published decision on de novo review. Our job is to make our own independent determination. We haven't said it anywhere else in any other area of the law. I have never seen that, and maybe Shoup is something I better reread. Say again what Shoup said, that under de novo review. On de novo review, our job is to make our own independent determination of whether Shoup was entitled to LTV benefits. No, but that's a different question. That is about whether we defer, give any deference to the plan administrator or whether the courts for themselves are supposed to figure out whether the benefits were properly denied. I just really don't believe you have a case that says the appellate court will make findings of fact and weigh credibility. I do, Your Honor, and that's the Johnson case again. Johnson says in an appeal under ERISA, we review a district court's decision de novo, employing the same standards governing the district court's review of the plan administrator's decision. That means we decide facts. We're going to judge the credibility of the plan administrator and the plaintiff right here. That's the important thing, Your Honor. This is a paper record. There are no witnesses. So there's no credibility of a witness that needs to be determined. There's just the same paper record in this court as there was in the other court. I'd like to move on. I think, Your Honors, I implore you to look at those cases. They say what they say, and they require this court to take a look at it de novo, not giving deference to what the district court stated. Now, let's look at what the district court here did because that also was mistaken. And that is important for you to do that. I want you to do it. But if you're listening to your court, how are you even going to get there if you don't work on convincing us that when a matter is resolved, a summary judgment at district court, and it comes to here and we find a disputed issue of fact, that this court then undertakes a fact-finding role itself as a matter of course in these cases. We may have because the record is so clear as to what the outcome. There have been cases we've done that. But that's not, from what I can determine, something that's been happening. Now, let me say this. You can perceive on as you please. But I'm telling you right now, that may not be a good course of action if you are listening to a court that's going the other way. And maybe we will change our mind in the back. But it's your argument. Your Honor, I can only say this. This in Shoup, the district court ruled against the plaintiff based on the facts. This court conducted its own de novo review of the facts and disagreed and said that the plaintiff was disabled under de novo review. Its own de novo review of those facts. Again, courts in other jurisdictions, a minority of jurisdictions, say we review under Rule 52, that is a minority. Most say, again, the First Circuit has said,  the Ninth Circuit, in fact, has said the exact same thing. That summary judgment, there's a split, even in the Ninth Circuit, which the district court cited to. There is not one case that has decided such an issue. So I am going to move on because it's important to see how the district court made mistakes. What is the site on the Shoup case there? The Shoup case is 19F4, 697, and I refer you to page 706 of the decision. And I'd like to move on again because the district court's decision is. . . You may do so. I'm sorry? You may do so. Oh, thank you, Your Honor. I apologize for interrupting. So the district court said, one of the big issues here is the court said that we overplay the issue of the lack of objective proof. That's not the case because in the Gallagher case, the Gallagher court said that a claimant must provide objectively satisfactory proof of a disability. And in this case, we have our own Dr. Jaffe. Counsel, I don't understand your argument under Gallagher. In Gallagher, the question was whether the proof has to be satisfactory to the plan administrator. Do we view it from that perspective or whether it has to be just objectively satisfactory proof? There is nothing in Gallagher about whether how to weigh sort of subjective symptoms like pain versus objective medical proof. Gallagher is about something entirely different. I respectfully disagree. I bet you do. And I argued that case 10 years ago to this court. That was an issue. And I would also point out when you're looking at the Shoup case on how to review this case, I would ask you also to look at the language in that same case on this very issue. When they're talking about the burden of proof, the court stated that not only on de novo review how the court is to do it, but then talks about the burden. And it says we look at the evidence before the plan. The burden of proving disability is on the employee. And he must do so via objectively satisfactory proof. Meaning it has to be objectively satisfactory. Don't run it through the perspective of the plan administrator. But you think Gallagher says something about how we compare subjectively experienced symptoms versus other forms of medical evidence. That's what you think Gallagher stands for. It says that you have to provide. Shoup says it. Shoup directly says it. I know I'm in my rebuttal time, but I think I need to finish this. Because if you look at the evidence in this case, her own brain injury doctor said that her symptoms are embellished. Every test, MRI, CT scans, cognitive tests, vestibular tests, which are what she's complaining about, are all negative or normal. And her own doctor who she relies on, Dr. Parker, describes her symptoms as unusual and unique. He's never seen a case like this. We have four doctors who we retain who says this is not supported. So that's why you have to, we're not saying disregard subjective, but there has to be some objective if it's available. And in this case there is. It's the vestibular testing. But it comes out negative. You seem to be saying, though, counsel, that there needs to be objective, an objective diagnosis as opposed to evidence of disability. No, no, it's quite the opposite. Well, here the trial court, the district court, clearly placed more weight on the evidence. Judge Trengel was very careful. He went through all the doctors. And he felt that your doctors were not as persuasive as Dr. Parker and the other ones. Now, certainly a couple of the doctors for the plaintiff did have some questions about her symptoms. But the court was entitled to consider the evidence as a whole and determine on the facts or what the facts were. And so I don't understand how you can say that the district court was, its factual findings were clearly erroneous. Well, we're not saying that, Your Honor. We're saying that you have to make an independent review. Well, I know you're saying that, but I don't think. But moving beyond that, Your Honor. I don't think you're going to get anywhere with that. Well, then, unfortunately, that's going to have to be an en banc issue because the law of the circuit is clear on that. But beyond that, Your Honor, Dr. Parker, who's the doctor she relied on, said that she's disabled. He's the one who said her symptoms are unique and unusual. And he's a family practice doctor. But Dr. Parker, all the way through, he talks about her post-concussion syndrome, severe hyperacusis, and magnified sounds become incapacitating. He said that she cannot tolerate working conditions due to the severity of the hyperacusis. And he's a family practice doctor, Your Honor. He was sent by her own. He referred her to Dr. Jaffe, the specialist. And Dr. Jaffe's the one who said she's embellished and all the testing's negative, including for the vestibulopathy, which is the dizziness that she's claiming. Well, Dr. Jaffe said there was no clear cause for her symptoms in the imaging evaluations, okay? He thought her symptoms were embellished, but that's part of his report. But he also said there was no clear cause for her symptoms. So it's not that he was saying she was faking it. He was just saying he doesn't see objective evidence of central or peripheral vestibulopathy, right? Your Honor, we're not talking about fibromyalgia where there's no dipstick, where there's no blood test. We're talking about vestibulopathy where there is testing for it, and it didn't support the claim. And then he says there's embellishment. He's the expert, not Dr. Parker and not Dr. Cintron. I know I'm eating into my time. I'd like to save some for rebuttal, and I can address this more then, Your Honor. Thank you. You may do so. We'll hear from Mr. Cantor for the appellee. Thank you, Your Honor. Glenn Cantor for the appellee. Anita Techman. Not the case I was thinking I'd be arguing this morning, Your Honor. First, I suppose I should discuss the Shoup case where I was counsel, and I think the court needs to understand what happened in Shoup. Shoup was filed in California. Tell us about the law as it is in Shoup. I looked through the Shoup case. First of all, the court does go through the summary judgment analysis. It points to all of the typical language and indicates the standard of review is to determine whether it is an issue of fact. Then the court pivots and then talks about a Supreme Court case that says that these cases are de novo, and there does seem to be a de novo review of the record by the court in which they then conclude. Typically, that occurs upon review of a summary judgment is where the facts are essentially undisputed. I mean, that's what gets it to a question of law and a de novo review, but if there are factual disputes to be resolved, that doesn't typically happen at this court. So did the court in Shoup effectively conduct a factual determination as opposed to a purely de novo review based on the law of facts that were in place? Now, there were stipulations in this case, and I don't know the extent of which those stipulations listed those facts in the dispute, but address that. I think you've got to get it. Somehow we've got to get off of this in terms of this summary judgment versus Rule 52, because we're not following it too well that we're going to be doing factual reviews of any kind of cases. We don't do that if we can have it unless it's clear. So address that from the Shoup's perspective. Well, the way I've addressed that, Your Honor, is as I said, the case was filed in California. It was transferred here. Judge Claude Hilton said, I want motions for summary judgment. They were filed. He ruled in the favor of the insurance company. We appealed, brought to this court, and this court said he was wrong. They did a de novo review of his findings because it was a summary judgment. What I would say to this court, and I would read from the decision, Horton v. Life Insurance Company v. America. The de novo review of his findings was the review to determine if there were issues of fact or was it to assess credibility and assess which side should prevail? I think the court decided that based on the facts before it, the record before it, and it's a closed record, that he was clearly wrong. But they did not say they were looking for clear error. They said, because it's a summary judgment, we are looking at what Judge Hilton did de novo. Mr. Bacharach is arguing that this court should look at what Judge Trenda did de novo, and we would argue no, that he ruled under Rule 52. There are different standards. If I could just briefly say that in the Horton case where Mr. Bacharach was opposing counsel, there's a divide among the circuit courts of appeal and a void in the Fourth Circuit as to whether FRCP 56 is necessarily the appropriate mechanism to resolve an ERISA claim for denial of benefits. The point I would make to this court is we talked about a gap in the last case and a void. End the void. This court, as all the circuit courts should do after 30 years of these cases, is say the appropriate mechanism for bringing a case where there are factual disputes to the district court is a Rule 52 motion because the court is then making factual findings. Yes, there's an agreement that this is the record. These are the documents. But, of course, the parties don't agree what those documents say. The court has to make credibility determinations about the doctors. It has to make medical determinations as to which is more compelling. But the circuit courts across the country, and I guess the Supreme Court, has not made a determinative statement that the appropriate mechanism is either 52 or 56. I've been doing this for 30 years, and I've gotten different rulings from different courts as how they want it brought. Some want it 56. Some want it 52. I would think this court should take the opportunity to clearly tell the district courts this is how we need this done from a policy point of view. Well, the big difference of what it means, I mean, you really don't have to have the confusion if you're simply saying you can go summary judgment just like you do in any other case, but if there are issues of fact and the trial judge would then determine on the 52 what it would be. The question comes is what happens when it comes up here. That's your problem. That needs to be two de novo reviews of something here, and the Supreme Court's language in Firestone says the challenge of benefits is reviewed under the de novo standard. It says unless the plan gives administrative authority to determine eligibility, but I'm not sure what the Supreme Court meant in that, but it doesn't seem to me they meant there should be two trials. No, Your Honor. I think in the Supreme Court, they were starting off with a determination of how a district court should review a plan administrator's decision, whether it was de novo by the district court or to give abusive discretion to the fact finder. The Supreme Court in the Firestone case said that absent language giving discretion to the plan administrator, the court would review it de novo. That's completely different than how a circuit court will review the factual findings of a circuit court. I'm sorry, of a district court. We are here, and this court should be looking at Judge Schrenger's decisions for clear error. I would argue that the last standard waived any complaints that this was a Rule 52. Mr. Carter, the trial counsel for plaintiffs, made it known in his pleadings that he thought it should be 52. The defense in their summary judgment reply said, well, it's not a strict 52. Well, if it's not a strict 52, what it is is a Rule 52 by a different name. And the court, and he made the same argument in oral argument, and the court in the transcript said, well, I'm really going to be finding facts. He then went on to say, this is not appropriate for 56. I have to make factual findings. I'm converting it to 52. And that's what he did. This case is before this court on a Rule 52 motion, and any argument that it shouldn't have been was way below. And more importantly, there's no prejudice. What would they have done differently if Judge Schrenger had said, we're going to call this 52. Are they going to file different briefs? Are they going to bring in different evidence? No. The evidence is there, what is before the court, in that closed record. There is no dispute about what that record was. Judge Schrenger said, I need to make factual findings, credibility findings, medical findings, which of the doctors are more persuasive, the law, and he did so, and he did it under Rule 52. Mr. Bachrach makes reference to that there was an error by counsel below with regard to his 56 findings. The lawyer made a motion for relief from that error, and the court granted it. And then denied the motion anyway. It wasn't even relevant. Mr. Bachrach also spoke about the Gallagher case, and that the court erred because there had to be objectively satisfactory evidence. What he then does is try to equate that with objective evidence. But court after court, the Duperre Court, the Cozy Court, and a court just recently, the District Court of Maryland in the, I'm not sure we've cited it, it's the Christofiak, the Boston Mutual case, which came out after the briefing. Actually, no, it was before the briefing. Mr. Bachrach was the opposing counsel, and the court said, defendant has misread Gallagher. That case, in which de novo review was applicable, requires plaintiffs to submit objectively satisfactory evidence of disability. Not objective evidence of disability. It's completely different. Under argument of counsel, someone who has severe migraines, debilitating migraines, there's no way to objectify that pain other than their subjective symptoms. Judge Schrenga very carefully went through this record. He noted 18 doctors on the plaintiff's side. He found them to be credible. Yes, there was one reference to embellishment by one of the doctors. But he also said he believed these were probably symptoms of post-concussive migraines. He didn't discount that she had a problem. He mentioned embellishment. One word out of 6,000 pages, that's their argument why the plaintiff should lose. One word, embellishment in one record. Another point, which I think the court should be focused on, is that one of the peer reviewers retained by Reliance Standard, Dr. Damien, who they relied upon to deny this claim, reported to Reliance Standard, Ms. Techman can work. And that's what they reported to Ms. Techman. Dr. Damien said, you can work. What they didn't say is the rest of his sentence, which said, as long as she's working in a location where there is no noise, no ambient noise, and no vibration. They left that out of their statement completely. They left it out of their statement, so this court, I think it's disingenuous to have them take their own peer reviewer, and if you look at the record, they went back to him twice to try and get addendums from him. Are you really saying that? Do you really mean that she can only work in an environment with no ambient noise? And his response was, yes, that's what I mean. What did they do with that? They did nothing but ignore it. Did they take it to a vocation expert and say, well, can this environment be provided to her? They didn't. Now, we can only speculate why. My speculation is because Reliance is a self-motivated, financially interested insurance company that was looking for a way not to pay this claim, and they knew that if they took that statement by their own peer reviewer to a vocational expert, they're going to say, that's an environment that is not possible for any reasonable employer to provide. This was a woman who was motivated to work. This was an employer who was motivated to keep her, but they couldn't provide that environment. It wasn't possible. There was no clear error here. There was no error at all. If you look at this case, clear error, de novo. If you were looking under an abusive discretion standard, the correct decision was made by the district court that the overwhelming evidence supported that this woman was disabled. I don't know what Mr. Backrup will say in rebuttal. They've made this argument that we don't cover people's locations. Well, once again, their arguments misstate the facts. No one said that she can't work because the location she was in prevented her from working. What happened was she got better. She moved to a particular environment that caused a severe relapse, and that relapse stayed in effect well after she stopped working. The record shows that there was a lawnmower nearby, and she fainted when she was at home from the noise. All of her doctors found her credible. The word embellishment, you can't take a 6,000-page record, find one doctor that says maybe one of her symptoms is embellished, and that means she's not disabled. Dr. Prasad, a neurologist, was recommending surgery for the problems he thought were there. That is not somebody who thinks that their patient is embellishing things. They're not going to operate on, I don't know, the brain or the ear because she's making up symptoms. Unless the court has more questions, I will reserve my time if I can. I don't think I need to, but I'll stop unless the court has questions. Thank you, Mr. Bacharach. Ganger. He's Mr. Bacharach. I'm sorry. I'm looking at a sheet back and forth, so when you said reserve time, you don't have any time reserved. This will be the last we're going to see of you today. That's what I mean. Unless the court has more questions, I will sit down. Great. Thank you, Your Honor. We'll hear from Mr. Bacharach. Thank you, Your Honor. I just want to refer back to the Shoup case. Court stated on page 706, upon conducting a de novo review of the record, we conclude that Shoup was disabled. So they conducted their own de novo review of the record, made their own factual findings. You know, that's granted. The Shoup case does, you know, it's kind of interesting the way the case goes. But, you know, the issue really before us is what prohibits a district court from using Rule 52 even if this is a way you can do it, even if this court on review can look at summary judgment. When you look at the Johnson case, the Johnson case dealt with where the court had granted summary judgment. And then it came up for review, and then the court moved from there. It didn't change anything. And even no matter how you look at it, I guess at the end of the day, you'd be okay if we just take this case now and just do a de novo review. All you're interested, you want us to do a de novo review of it instead of looking at these findings for clear error, which we do under Rule 52. I suppose, and as I look at the Shoup case, I'm trying to determine, did that court really resolve disputed issues of fact? Because even in summary judgment, you get to a de novo review where the facts are undisputed. Then you get to the question of law. Does that lead to the legal determination on the summary judgment? Does it rule in favor of the defendant or rule there? That's what a de novo review. But what you want is factual de novo review because of the reckoning of the record, the de novo view of the record. I got it. That's exactly what the court did there. But someone has to clean this up because I don't think we're going to take on this job of reviewing these cases every time they come up on the record. That's trial judges. If we're going to do that, what would a trial judge do? He might as well just send it up and say, Judge, let's do a de novo review of it. We don't need to do it. We don't do that. If it's a summary judgment, it would be a pun to facts. And if the facts come up here undisputed, we determine as a matter of de novo, is this a law correct moving this direction for the plaintiff or does it go for the defendant on those undisputed facts? Got to make some sense out of this. I'm telling you. But the ultimate question, I'll go back to it, what prohibits a trial court from saying, Denial of summary judgment, I'm going to conduct a Rule 52 review and I'm going to make findings of fact, and boom, here's the result. I would say it's this court's precedent. That's what does it. Which precedent? The Johnson case, the Shoup case, and numerous cases before then. When were they decided? Your Honor, Shoup was last year. When were those cases decided? You're talking about the Shoup case that just got decided in 21? Yes. So you're saying in 21 we set a policy that had never before been set? No. It was said in Johnson. It was said in the Cozy case. It's been said repeatedly. But, Your Honor, let me. I'm sorry. You think in those cases the court held district courts may not conduct Rule 52 bench trials in ERISA cases? No. It was never explicitly stated this is the way it's been done for years and years and years. But it's not the only way it's been done. District courts in this circuit have been doing Rule 52 bench trials too. In ERISA cases? Yes. The district court could only find one, an Eastern District of Virginia case that was in the 2000s. The Newman case? Excuse me? Yes. There was just the one. I do need to move on because there are a number of incorrect statements that were made by counsel. We're not just relying on the fact that there was embellished, and this isn't a migraine case. There is testing for cognitive problems. There is testing for vestibulopathy, and none of it corroborated these symptoms. And counsel said that his client passed out because the lawnmower was operating a block away, and yet the same person is able to drive herself to and from her examinations. And clearly there are going to be vibrations doing that. If she's passing out, how could she be driving? Her own doctor, one of her other doctors, says this looks like a mental illness to me. And she never sought that treatment because she was embedded with the fact that this was physical, and that does matter under the policy. Counsel also argued that the building, the new building she moved into exacerbated her symptoms, and therefore even after she was no longer there, she couldn't work. That's not what she told her doctors. It's in our brief. She said working in that new building was the problem. And our policy says that a specific location cannot be the basis for a disability claim. We also have this district court judge fail to not only follow Gallagher and Shoup as far as subjective evidence, but the court also failed to follow the Supreme Court in the case of Black & Decker v. Nord, which says that you can't place undue weight on the opinion of a treating physician. If I may finish this point, Your Honor. Thank you, Your Honor. So in Black & Decker, again, the Supreme Court stated that you cannot require a plan to offer special weight to the opinion of a treating physician. But the district court said just that here, that it was giving special weight to the opinion of the treating doctors because they actually saw her. And in a different case, in Griffin v. Hartford Life, this court stated again, no, that's wrong. It's the claimant's burden. There is no obligation to conduct an IME. Well, thank you, Mr. Blackrock. We appreciate your argument. Appreciate the argument of counsel here today. Counsel, do you have any further questions or inquiries at this time? We thank both of you for your presence here. As I said before, we normally would come down and shake your hands. We just won't do so now out of the safety and your safety and ours in terms of what we all know is existing now. But we do anticipate and hope that that practice will resume sometimes in the near future. At this time, the court is going to adjourn for the day until we resume court again in the morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: James Andrew Wynn, Pamela A. Harris, Barbara Milano Keenan